UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANIEL EARLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:09-cv-373-WTL-DML |
| ) | |
| MICHAEL ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ENTRY ON JUDICIAL REVIEW**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Daniel Early seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court rules as follows.

**PROCEDURAL HISTORY**

Early filed his application on January 28, 2005 alleging disability beginning on November 29, 2004, due to low back pain, high blood pressure, heart problems, and depression. His application was denied initially on March 29, 2005. Upon reconsideration, Early's application was again denied on June 9, 2005. Early timely requested a hearing before an Administrative Law Judge ("ALJ"). That hearing, at which Early was represented by counsel, was held before ALJ Reinhardt Korte on June 24, 2008. Early testified, as did psychologist medical expert Dr. Donald Olive, family physician medical expert Dr. Lee Fisher, orthopedic surgeon medical expert Dr. Anthony Francis, and vocational expert Constance Brown. In his July 8, 2008,

decision, the ALJ denied Early's application for benefits. After the Appeals Council denied review of the ALJ's decision on December 15, 2009, Early filed this timely appeal.

## EARLY'S MEDICAL HISTORY

Early was 34 years old when he filed his application for benefits. He was 40 years old on the date of the ALJ's decision. Early is a high school graduate whose past relevant work experience is as a courier.

Given the nature of Early's arguments and the Court's resolution of them, only a general discussion of the medical evidence in the record is necessary. Early suffers from lumbar disc disease, which he has been treated for since 1992. Early has had four back surgeries, the most recent of which was in late 2002. From 2002 until the alleged onset date, Early apparently did fairly well. However, following a work-related injury in 2004, Early began experiencing constant lower back pain which radiates down his left leg. Although he has good and bad days, Early stated that he cannot sit for more than thirty minutes. To cope with his back pain, Early lays down frequently and alternates sitting and standing. In addition to his back problems, Early has been treated for cardiac arrhythmia, hypertension, depression, and anxiety. These conditions are well-controlled with medication. Additional evidence of record is discussed as relevant below.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must

demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific

evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## DISCUSSION

The ALJ found at step one that Early had not engaged in substantial employment since his alleged onset date of November 29, 2004. At steps two and three, the ALJ concluded that Early had the severe impairments of lumbar disc disease, cardiac arrhythmia, and hypertension, but that those impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Early retained the residual functional capacity ("RFC") to perform light work; that is, sit, stand, and walk up to eight hours during an eight-hour work day and lift and carry up to ten pounds occasionally and up to twenty pounds frequently. Early was required to avoid concentrated exposure to wetness. He was also limited to occasional climbing of ramps and stairs, and he should never climb ropes or scaffolds. The ALJ found that Early was unable to return to any of his past relevant work, but that considering his age, education, work experience, and RFC, he was capable of performing a significant number of jobs in the national economy, including cashier II and courtesy booth cashier. Therefore, the ALJ determined that Early was not disabled.

Early advances several objections to the ALJ's decision, each of which is addressed, in turn, below.

### *Dr. Coscia's Opinion*

Early first argues that the ALJ did not recognize that Dr. Coscia was a treating physician whose opinion may be entitled to controlling weight. With respect to a treating physician's opinion, the applicable regulations state:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed [below].

20 C.F.R. § 404.1527(d)(2). As interpreted by the Seventh Circuit, this "treating physician rule" instructs an ALJ "to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)). If the evidence supports a treating physician's medical opinion and contradictory evidence does not exist, the ALJ lacks a basis to reject it. *Id.* But if conflicting evidence exists, the treating physician's opinion does not receive controlling weight. *Id.* Rather, the treating physician's opinion is merely additional evidence for the ALJ to consider using a variety of factors, including the length of time and how often the treating physician examined the claimant. *Id.*

In the instant case the ALJ referred to Dr. Coscia as an "evaluating specialist," Record at 25, not as a treating physician. Given that Dr. Coscia performed two of Early's four back surgeries and treated him from 1992 until at least 2005, it is clear that Dr. Coscia was a treating physician. Thus, the ALJ's failure to determine whether Dr. Coscia's opinion was entitled to controlling

weight was an error.

This error might have been harmless, inasmuch as the ALJ purportedly accepted Dr. Coscia's opinion, noting that it was "very consistent with the objective medical evidence." *Id*. However, Dr. Coscia imposed limitations on Early's RFC that were not included in the ALJ's decision. Specifically, Dr. Coscia concluded that Early "should limit his bending and overhead reaching to only an occasional basis and end at an eight hour work day. He can sit frequently, stand occasionally and walk frequently. He should alternate his sitting, standing and walking ideally during an eight hour work day." *Id*. at 668. The ALJ in turn stated that Early

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant could sit, stand and walk for eight hours during an eight-hour day. The claimant could lift and carry up to ten pounds occasionally and up to twenty pounds frequently. The claimant could occasionally climb ramps or stairs and could never climb ropes and scaffolds. The claimant could never kneel, crouch, or crawl. The claimant could not tolerate vibrations or concentrated exposure to wetness. The claimant could frequently balance and occasionally stoop. The claimant must avoid concentrated exposure to machinery and heights.

*Id.* at 23. Noticeably absent from the ALJ's decision is any limitation on Early's overhead reaching. Nor does the ALJ address the total amount of time that Early could stand during the workday or Early's need to alternate sitting, standing, and walking. The ALJ's purported reliance on Dr. Coscia's opinion, while in reality ignoring the totality of the opinion, is error. On remand, the ALJ should address the totality of Dr. Coscia's opinion and explain the weight he affords it when determining Early's RFC.

### *Credibility Determination*

Early also claims that the ALJ erred in finding Early's testimony regarding the extent of his pain and other subjective symptoms not credible. Early alleges that he experiences constant

6

back pain and that his medication causes him to feel drowsy and fatigued. With regard to subjective symptoms such as pain, if a claimant has a medically determinable impairment that is reasonably expected to produce pain, then the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of that pain. The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2).

Because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, the ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

> The reasons for an ALJ's credibility determination must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (quoting SSR 96-7p). Given this standard, it is clear that the ALJ in this case failed properly to articulate his reasons for finding Early less than fully credible.

With respect to Early's credibility the ALJ stated:

7

> The objective medical evidence shows the claimant's condition did not permanently worsen as do [sic] the preponderance of the medical opinion. He was able to attend to the hearing closely and fully without any noted distractions or overt pain behavior. The claimant was able to respond to questions in an appropriate manner. The claimant tended to exaggerate. His complaints are not consistent with the objective medical findings. The claimant's activities of daily living show he is more functional than he acknowledges. The claimant has a valid driver's license and continues to drive. The claimant occasionally drives to Tennessee to visit his uncle and his houseboat. The claimant does household chores. The claimant helps his son with his homework.

Record at 27.

This type of conclusory statement is insufficient to support a credibility determination. *Brindisi*, 315 F.3d at 787. The regulations prohibit the ALJ from rejecting Early's testimony regarding his symptoms "solely because the available objective medical evidence does not substantiate [his] statements," 20 C.F.R. § 404.1529(c)(2), as long as he has a medically determinable impairment that could reasonably be expected to produce the symptom he alleges. In the instant case the ALJ concluded that Early had "the following severe impairments: lumbar disc disease, cardiac arrhythmia and hypertension." Record at 21.

Further, the ALJ never explained how the objective medical evidence of record demonstrated that Early was not experiencing the type of pain he alleged. Nor did he explain how Early tended to exaggerate or how Early's complaints were "not consistent with the objective medical findings." *Id*. at 27. The ALJ instead relied on his observations of Early at the hearing and Early's activities of daily living and concluded that Early is simply not credible. While observation of a claimant certainly may be considered as one factor in a credibility determination, the Seventh Circuit has stated that it is uncomfortable with what it terms the "sit and squirm" test, and suggested that such observations alone may not be sufficient to support a finding that the claimant's pain allegations are not credible. *Powers v. Apfel*, 207 F.3d 431, 436

(7th Cir. 2000).

As far as the ALJ's reliance on Early's activities of daily living as evidence that his subjective complaints are not credible, the Seventh Circuit has held that daily activities such as washing dishes, helping children with schoolwork, doing laundry, and cooking meals are not "of a sort that necessarily undermines or contradicts a claim of disabling pain." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). Furthermore, Early testified that although he does continue to drive and occasionally visits Tennessee, "it's quite hard to get there" because he "can't sit in a seat that long and [can't] drive that long." Record at 752. Early also testified that although he tries to help with household chores it is difficult because "it hurts." *Id*. at 756. Specific tasks, especially washing dishes were apparently "horrendous." *Id*. The ALJ cannot simply disregard Early's limitations in performing household activities, *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009), yet that is precisely what the ALJ did.

The Court also notes that a claimant does not have to be totally bedridden to be entitled to DIB, and the ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week." *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).

### *Hypothetical Question*

One further note is in order. During the hearing the ALJ did not set out a hypothetical for the vocational expert. Instead, the ALJ stated only: "Then using, we have a younger individual, twelfth grade education. We have the RFC. What jobs are available out there, if any, at that juncture?" *Id*. at 774. This is not adequate. On remand the ALJ should articulate a hypothetical to the vocational expert that includes all of Early's limitations so that it is clear that the

vocational expert understood the claimant's RFC.

## CONCLUSION

For the reasons discussed at length above, this case is **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this decision.  The ALJ shall be sure to fully articulate the reasons for finding Early not credible.  In addition, the ALJ shall address Dr. Coscia's opinion and either include his suggested restrictions in the RFC or explain why these restrictions are not necessary.  Finally, the ALJ shall articulate a hypothetical to the vocational expert to ensure that he or she understands the claimant's RFC as determined by the ALJ.

SO ORDERED:  07/26/2010

Copies to:

Steven R. Jacobs
srjindy@aol.com

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov

Eric E. Schnaufer
eric@schnaufer.com

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana